UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                    :

EDWIN M. FORTUNATO TAPIA,       :

                    :

          Petitioner,  :

                    :         26-CV-2527 (VSB)

     -against-      :

                    :       **OPINION & ORDER**

PAUL ARTETA, in his official capacity as  :
Sheriff of Orange County, New York and  :
Warden of Orange County Correctional  :
Facility, *et al.*,            :

                    :

        Respondents. :

                    :
-------------------------------------------------------- X

Appearances:

Alejandro H. Cruz
Kabir Hashmi
Howard H. Kim
Patterson Belknap Webb & Tyler LLP
New York, NY
*Counsel for Petitioner*

Tudor M. Neagu
United States Attorney's Office, Southern District of New York
New York, NY
*Counsel for Respondents*

VERNON S. BRODERICK, United States District Judge:

Before me is Edwin M. Fortunato Tapia's ("Tapia" or "Petitioner") Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE") and seeking an order directing the Government to immediately release Petitioner from custody. (Doc. 19 ("Amended Petition" or "Am. Pet.").) For the reasons set forth below, the Amended Petition is GRANTED IN PART and DENIED IN PART.

## I.    Factual and Procedural Background

Petitioner is a 23-year-old citizen of the Dominican Republic.  (Doc. 8-5.)  For almost

nine years, since November 2017, Petitioner has lived in the United States as a Lawful

Permanent Resident ("LPR").  (Am. Pet. ¶¶ 4, 20.)  Petitioner's mother, siblings, and

grandmother also live in the United States as LPRs.  (*Id.* ¶¶ 4, 23.)  Petitioner's daughter, who is

one year old, is a United States citizen.  (*Id.* ¶¶ 4, 22.)

On February 16, 2026, Petitioner returned to the United States and arrived in John F.

Kennedy International Airport ("JFK") after an eight-day trip to the Dominican Republic to visit

his family and friends.  (Am. Pet. ¶¶ 3, 25.)  Upon arrival, a U.S. Customs and Border Protection

("CBP") officer referred Petitioner to secondary inspection.  (Doc. 9 ("Paulino Decl.") ¶ 6.)

CBP officers at JFK questioned Petitioner about:  (i) his 2022 arrest in New York for the

misdemeanor crime of auto stripping pursuant to N.Y. Penal L. § 165.10, for which Petitioner

was sentenced to six months of incarceration, (Doc. 8-6 ("Record of Sworn Statement") at 5;

Doc. 8-2 ("FBI Identity History Report") at 11–13); (ii) his 2023 arrest in Pennsylvania for

driving under the influence pursuant to 75 Pa. Cons. Stat. § 3802(d)(2), (Record of Sworn

Statement 5; FBI Identity History Report 7); and (iii) his two 2024 guilty pleas in Pennsylvania

for possession of a small amount of marijuana pursuant to 35 Pa. Stat. § 780-113(a)(31), which

imposed monetary penalties and no incarceration, (Record of Sworn Statement 5–6; FBI Identity

History Report 7–9; *see also* Docs. 19-2 and 19-3 (Feb. 6, 2024 and Mar. 20, 2024 Guilty Pleas

for the charge of "Marijuana-Small Amt Personal Use"); Docs. 19-4 and 19-5 (Feb. 6, 2024 and

Mar. 20, 2024 Orders Imposing Sentence)).  "[U]pon a review of Petitioner's criminal history

and upon questioning Petitioner[,] . . . [CBP] determined that Petitioner appeared inadmissible to

the United States pursuant to Immigration and Nationality Act ("INA") § 212(a)(2)(A)(i)(II), 8

2

U.S.C. §1182(a)(2)(A)(i)(II), as an alien convicted of, or who admits having committed, a violation of a law relating to a controlled substance."  (Paulino Decl. ¶ 6.)

Petitioner was held at JFK for two days, during which time he "slept on the floor alongside other detainees and received minimal food," "had limited access to his family," and "was given no information about where he would be taken or how long he would be held."  (Am. Pet. ¶¶ 5, 27.)  On February 18, 2026, Petitioner was transferred from CBP to ICE custody at JFK, (Paulino Decl. ¶ 7), and was served with a Notice to Appear charging Petitioner with inadmissibility pursuant to INA § 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II), as being a non-citizen "who has been convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act (21 U.S.C. 802))," (Doc. 19-6 ("NTA") at 5).  The NTA lists the February 6, 2024 and March 20, 2024 convictions for possession of a small amount of marijuana.  (*Id.*)  Later on February 18, 2026, Petitioner was transferred to Orange County Correctional Facility, where he has been detained ever since.  (Am. Pet. ¶¶ 5–6, 19.)

On February 19, 2026, ICE filed the NTA with the Immigration Court, thereby placing Petitioner into removal proceedings.  (Paulino Decl. ¶ 10.)  On February 26, 2026, Petitioner appeared before an Immigration Judge, with his initial immigration counsel, for a master calendar hearing and Petitioner was granted a continuance until March 12, 2026.  (*Id.* ¶ 12; Am. Pet. ¶ 32.)  On March 12, 2026, Petitioner appeared before an Immigration Judge for a master calendar hearing and Petitioner's initial immigration counsel did not contest the factual allegations in the NTA and did not seek any form of relief for Petitioner.  (Paulino Decl. ¶ 13;

3

Am. Pet. ¶¶ 33–35.)  On March 19, 2026, an Immigration Judge found that because Petitioner "did not file any applications within the time limit," he "abandoned any and all claims for relief or protection from removal," and the Immigration Judge ordered that Petitioner be removed on the charges contained in the NTA.  (Doc. 19-7.)[1]

On March 27, 2026, Petitioner initiated this action by filing a petition for a writ of habeas corpus through his next friend.  (Doc. 1.)  Later that day, I issued an Order to Show Cause.  (Doc. 5.)  The Order to Show Cause enjoined Respondents from transferring Petitioner out of the country or the New York City metropolitan area and directed Respondents to file a letter by March 30, 2026 indicating:  "(1) under what statutory provision Petitioner is being detained [];  (2) whether Petitioner was located in the Southern District of New York at the time that the Petition was filed, as Petitioner alleges; and (3) whether this case is distinguishable from my decisions in *Sidqui v. Almodovar*, No. 25-CV-9349, 2026 WL 251929 (S.D.N.Y. Jan. 30, 2026), *Han v. Noem*, No. 25-CV-1075[3], 2026 WL 322963 (S.D.N.Y. Feb. 6, 2026), and the majority of cases in this District that have held that 8 U.S.C. § 1226(a), or the discretionary detention statute, applies to noncitizens currently present in the country rather than the mandatory detention statute of 8 U.S.C. § 1225(b)."  (*Id.* at 2.)  The Order to Show Cause also scheduled an initial telephonic conference for March 31, 2026.  (*Id.*)  On March 30, 2026, the Government filed a letter in response to the Order to Show Cause, asserting that "Petitioner is an arriving alien principally detained under 8 U.S.C. § 1225(b)(2)(A), and also subject to detention under 8 U.S.C. § 1226(c)(1)(A)."  (Doc. 6 at 1.)  The Government also stated that this case is materially distinguishable from my previous decisions in *Sidqui* and *Han* because "those decisions

---

[1] After the removal order was issued, Petitioner retained new immigration counsel, who timely appealed the Immigration Judge's removal order to the Board of Immigration Appeals ("BIA") on April 13, 2026.  (Am. Pet. ¶ 37.)  As of the Amended Petition, that appeal remains pending.  (*Id.*)

concerned whether 8 U.S.C. § 1225(b)(2)(A) or 8 U.S.C. § 1226 governed the detention of certain noncitizens who were arrested in New York after previously unlawfully entering the United States" and "[h]ere, Petitioner is an arriving alien (i.e., applicant for admission) who was arrested while applying for admission to the United States as a returning lawful permanent resident at JFK International Airport." (*Id.* at 1–2.) On April 7, 2026, the Government filed its response to the habeas petition, (Doc. 8), along with a declaration of Deportation Officer Leonel Paulino, (Paulino Decl.), and a memorandum of law in opposition, (Doc. 10).

On April 8, 2026, I issued an order directing the Clerk of Court to attempt to locate pro bono counsel to represent Petitioner in this case. (Doc. 12.) On April 17, 2026, pro bono counsel appeared for Petitioner and requested leave for Petitioner to amend his habeas petition, which I granted on that same day. (Docs. 14–18.) On May 8, 2026, Petitioner filed the Amended Petition, along with several exhibits. (Doc. 19.) On June 4, 2026, the Government filed a response to the Amended Petition.[2] (Doc. 21 ("Opp'n").) On June 11, 2026, Petitioner filed a reply in support of the Amended Petition. (Doc. 22 ("Reply").)

The Government contends that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2) ("§ 1225" or "§ 1225(b)"),[3] which requires mandatory detention of "(1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States

---

[2] According to the briefing schedule I so-ordered on April 17, 2026, the Government failed to file a response to Petitioner's Amended Petition despite the filing being due on May 22, 2026. (Doc. 18.) On May 28, 2026, I issued an order extending the Government's time to respond to Petitioner's Amended Petition *nunc pro tunc* to June 4, 2026 and correspondingly extended Petitioner's time to file a reply in support of his Amended Petition to June 11, 2026. (Doc. 20.)

[3] Ordinarily, "[a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws." 8 U.S.C. § 1101(a)(13)(C). However, a LPR may be "regarded as seeking an admission into the United States" if he "has committed an offense identified in section 1182(a)(2) of this title." 8 U.S.C. § 1101(a)(13)(C)(v). Section 1182(a)(2) covers "[c]riminal and related grounds," a category that encompasses "a violation of […] any law or regulation of a State . . . relating to a controlled substance." 8 U.S.C. § 1182(a)(2)(A)(i)(II).

after inspection and authorization," *Barbosa da Cunha v. Freden*, 175 F.4th 61, 74 (2d Cir. 2026), and 8 U.S.C. § 1226(c)(1), which generally requires mandatory detention where a noncitizen "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person," 8 U.S.C. § 1226(c)(1)(E)(ii). (*See also* Opp'n 1–2, 4, 8–9.) Petitioner does not appear to dispute that he is detained pursuant to these statutes, and instead states that I "need not engage in the [] exercise of parsing [Petitioner's] statutory classification because [his] detention is unconstitutional in either case." (Am. Pet. ¶ 75; *see also* Reply 1 ("The unlawfulness of Mr. Tapia's detention does not turn on the scope of authority conferred on the Government by statute; rather, Mr. Tapia's detention is unlawful because of the constitutional limits on that authority.").) Thus, I do not analyze the statutory basis for Petitioner's detention because "[w]hether [Petitioner] was detained pursuant to Section 1225(b) or Section 1226(c) is irrelevant to the question of how much due process he should be afforded, for LPRs such as [Petitioner], who return to the United States after a brief trip abroad, are entitled to the same due process rights as if they had never left the country." *Galo Espinal v. Decker*, No. 17-CV-3492, 2017 WL 4334004, at *3 (S.D.N.Y. June 30, 2017).

## II.      **Legal Standard**

28 U.S.C. § 2241 authorizes federal district courts "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States,'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)), including claims by non-citizens challenging their detention without bail, *see Demore v. Kim*, 538 U.S. 510, 516–17 (2003). "When a petitioner brings a habeas petition

pursuant to § 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, No. 20-CV-3118, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)).

### III.    Discussion

As an initial matter, as an LPR returning from a short, eight-day trip abroad, Petitioner is entitled to due process under the Fifth Amendment.  The Government argues that "Petitioner's procedural due process rights have not been violated because arriving aliens have more limited constitutional rights, and they may be detained without a bond hearing."  (Opp'n 2.)  I disagree. Contrary to the Government's argument, Petitioner is not an "alien on the threshold of initial entry," (*id.* at 7 n.4), "but rather a noncitizen who has been living in the United States" since November 2017, *Gonzalez v. Joyce*, No. 25-CV-08250, 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025) (striking down the same argument).  "Accordingly, 'the Fifth Amendment entitles [Petitioner] . . . to due process of law' regardless of whether his 'presence here is lawful, unlawful, temporary, or permanent.'" *Id.* (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)); *see also Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."); *Joseph v. Arteta*, No. 26-CV-2979, 2026 WL 1193489, at *4 (S.D.N.Y. Apr. 30, 2026) ("LPRs present inside the United States are entitled to even more robust constitutional protections than noncitizens without any legal status. . . . LPRs 'become[ ] invested with the rights guaranteed by the Constitution to all people within our borders . . . includ[ing] those protected by . . . the Fifth Amendment[,]' which does not 'acknowledge[ ] any distinction between citizens and resident

aliens.' (quoting *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 n.5 (1953) (alterations in original))). "Because [Petitioner] is an LPR who was absent from the United States only briefly and expressed no intention of abandoning his residency in the United States, he is entitled to the full due-process protections of the Fifth Amendment. He is entitled to those process rights due to an LPR who has been continuously present in the United States and who is subject to mandatory detention under the immigration laws." *Joseph*, 2026 WL 1193489, at *5.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal citations omitted). Courts weigh three factors when considering what due process is due: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

### A.      *The Private Interest*

The first *Mathews* factor requires consideration of Petitioner's private interests affected by the Government's action. 424 U.S. at 335. Petitioner's interest in freedom from detention "lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The interest in being free from physical detention "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention . . . is the carefully limited exception."). "Courts in this district routinely grant bond hearings to noncitizens before the six-month mark when that noncitizen's private interests are especially

strong." *Joseph*, 2026 WL 1193489, at \*6 (collecting cases and ordering that an LPR, who the Government contended was subject to mandatory detention under both § 1225(b) and § 1226(c), be granted a bond hearing after being detained for five months).

Here, the Government "does not dispute that [Petitioner's] liberty is at issue," but argues that the "liberty interest []is not absolute" because noncitizens "charged with being removable or inadmissible have no fundamental right to be released during removal proceedings." (Opp'n 17.) Petitioner argues that he has a substantial liberty interest and that his detention has significantly affected the interests of his family. (Am. Pet. ¶¶ 52–58.) Petitioner's interest in freedom from detention is particularly strong given that he has been detained for over four months, and his continued detention may span many more months, or potentially years, pending his appeal to the BIA and any subsequent appeal to the Second Circuit, if necessary. Moreover, Petitioner's interest is strengthened by the individualized harm he continues to suffer each day he remains detained, including being separated from his family. Petitioner is a primary caregiver for his one-year-old daughter and his ailing grandmother, who has Alzheimer's Disease. (Am. Pet. ¶¶ 22–23, 55–56.) While detained, Petitioner cannot "pay child support or purchase the basic necessities [that] his daughter needs" and "[h]is daughter's mother has been forced to pick up extra shifts just to stay afloat." (*Id.* ¶ 56.) Petitioner's mother must also "find and pay for additional help to care for both Mr. Tapia's ten-year-old sister and his grandmother, all with extremely limited financial resources." (*Id.* ¶ 57.)

Thus, I find that the first *Mathews* factor decidedly weighs in Petitioner's favor.

### B.       *The Risk of an Erroneous Deprivation of Petitioner's Private Liberty Interests and the Probable Value of Additional Procedural Safeguards*

The second *Mathews* factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute

procedural safeguards." 424 U.S. at 335. In analyzing this factor, "[t]he only interest to be considered . . . is that of the detained individuals—not the government." *Black v. Decker*, 103 F.4th 133, 152 (2d Cir. 2024), *cert. granted sub nom. Genalo v. Black*, No. 25-886, 2026 WL 1718025 (U.S. June 15, 2026). The Government contends that the risk of erroneous "deprivation is low" because "Petitioner has received a full removal hearing, and has not disputed his criminal convictions," and he appealed his removal order to the BIA. (Opp'n 18.) Petitioner asserts that the risk of erroneous deprivation is "extreme because the Government has provided no meaningful procedure at all." (Am. Pet. ¶ 60.)

Detainees are afforded virtually no procedural safeguards under either Section 1225(b)(2) or Section 1226(c). "Those detained under Section 1225(b)(2)(A) have no statutory right to an individualized bond hearing to test the need for detention." *Peguero v. Arteta*, No. 26-CV-01715, 2026 WL 821428, at *4 (S.D.N.Y. Mar. 25, 2026). Moreover, "the 'procedures used' for section 1226(c) detainees are very few." *Black*, 103 F.4th at 152 (quoting *Mathews*, 424 U.S. at 335). "They include no mechanism for a detainee's release, nor for individualized review of the need for detention. The only procedural protection in place is the *Joseph* hearing, at which noncitizens can contest whether they in fact committed a crime that makes them subject to mandatory detention." *Id.* (citing *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)). The Government acknowledges that the "sole exception" to detention under § 1226(c) is "for witness protection purposes," (Opp'n 9), which is inapplicable here. Moreover, "section 1226(c)'s broad reach means that many noncitizens are detained who, for a variety of individualized reasons, are not dangerous, have strong family and community ties, are not flight risks and may have meritorious defenses to deportation at such time as they are able to present them." *Black*, 103 F.4th at 152 (internal quotation marks omitted). "Section 1226(c) sweeps in people convicted of

10

many nonviolent offenses . . . and does not take into account when the prior crime was committed, suggesting that the prior conviction may well be a poor proxy for a finding of dangerousness." *Id.* (internal citations omitted).

In *Black*, the Second Circuit considered whether due process rights precluded the prolonged detention of two noncitizens who were detained under Section 1226(c), 103 F.4th at 143–155, which the Government contends is one of the two statutory bases for Petitioner's mandatory detention, (Opp'n 1–2). The court in *Black* observed that "[t]he Supreme Court has held that detention under section 1226(c) without an *initial* bond determination does not, on its face, violate the detainee's due process rights where detention is 'for the limited period of . . . removal proceedings.'" 103 F.4th at 141 (emphasis in original) (quoting *Demore*, 538 U.S. at 531). However, the *Black* decision also explained that "*Demore* was careful to emphasize the relatively short duration of section 1226(c) detention, stressing data showing that detention under section 1226(c) lasts roughly a month and a half in 85% of cases, and four months where the noncitizen chooses to appeal." *Id*. at 151 (citing *Demore*, 538 U.S. at 529). "The Circuit then concluded that, while due process does not require an initial bond hearing for noncitizens detained under § 1226(c), detention under § 1226(c) might become unreasonably prolonged so as to necessitate 'additional procedural protections,' such as a bond hearing." *J.M.P. v. Arteta*, 804 F. Supp. 3d 387, 392 (S.D.N.Y. 2025) (quoting *Black*, 103 F.4th at 145). Although the Second Circuit "reject[ed] a bright-line constitutional rule" requiring a bond hearing after a fixed period of detention, it held that courts should apply the *Mathews* balancing test "to assess, case by case, whether an individual's prolonged section 1226(c) detention violates due process." *Black*, 103 F.4th at 150.

11

Petitioner has lived in the United States for approximately nine years as a LPR, is a "key pillar of his family," (Am. Pet. ¶¶ 4, 55), and takes care of his one-year-old daughter and ailing grandmother, (id. ¶¶ 55–57).  Petitioner was afforded no process prior to being detained, (see id. ¶¶ 1, 7, 30), and the Government bases Petitioner's detention on his two convictions for possession of a small amount of marijuana, (Opp'n 8–9).  The two convictions for possession of a small amount of marijuana are misdemeanor charges that Petitioner pled guilty to two years ago and paid a fine for.  (See Doc. FBI Identity History Report 8–9, Doc. 19-4, Doc. 19-5.) Neither of those misdemeanor charges are violent, and Petitioner has lived a law-abiding life for the last two years.[4]  Significantly, the Government does not argue that Petitioner is a danger to the community or a flight risk.  (See generally Opp'n.)  Nor could they do so based on the record, which indicates that Petitioner has deep ties in New York, including his daughter, who is a United States citizen, the fact that he is a LPR who has resided in the country for approximately nine years, and that his "mother, siblings, and grandmother also live here . . . as LPRs."  (Am. Pet. ¶¶ 20–24.)  Taken together, like the petitioner in Black, Tapia's "circumstances similarly suggest a high likelihood that he was subject to an erroneous deprivation of liberty as his section 1226(c) detention was prolonged."  103 F.4th at 153. Moreover, the minimal burden placed on the Government in granting Petitioner a bond hearing would add value by permitting review of Petitioner's custody status for the first time in over four months.  "Considering the procedures available to Petitioner are essentially nil, then 'any

---

[4] The Government notes that shortly after being arrested on March 20, 2024 for possession of a small amount of marijuana in Pennsylvania, "[o]n March 25, 2024, Petitioner was arrested in New Jersey for theft of property lost, mislaid, or delivered by mistake under N.J. Stat. Ann. § 2C:20-6; use of personal identifying information of another under N.J. Stat. Ann. § 2C:21-17.2A; and trafficking personal identifying information under N.J. Stat. Ann. § 2C:21-17.3A."  (Paulino Dec. ¶ 5.e.)  "On May 8, 2024, the case was remanded to the lower court, the charges being: Theft of property lost, mislaid, or delivered by mistake under N.J. Stat. Ann. § 2C:20-6; receiving stolen property under N.J. Stat. Ann. § 2C:20-7A; and tampering with public records under N.J. Stat. Ann. § 2C:28-7A(1)."  (Id.) The documentation provided by the Government related to these charges does not indicate the status of these charges.  (See Doc. FBI Identity History Report 2.)

12

additional procedural safeguard[ ] . . . would add value.'" *Peguero*, 2026 WL 821428, at \*4 (quoting *Black*, 103 F.4th at 153 (alterations and emphasis in original)).

Thus, the second *Mathews* factor weighs in Petitioner's favor.

### C.    *The Government's Interest*

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

The Government argues that its interests including "ensuring the noncitizen's appearance at proceedings" and "protecting the community from noncitizens who have been involved in crimes that Congress has determined differentiate them from others . . . justify a relatively short-term deprivation of liberty" and note that its interests "continue to be served while [Petitioner's] removal proceedings run their course."  (Opp'n 18–19 (quoting *Black*, 103 F.4th at 153–54).) The Government made the same argument in *Black*, which the Second Circuit rejected.  *See Black*, 103 F.4th at 153 ("The government has identified two primary interests in support of unlimited mandatory detention:  (1) ensuring the noncitizen's appearance at proceedings, and (2) protecting the community from noncitizens who have been involved in crimes that Congress has determined differentiate them from others.  These interests are legitimate and their importance well-established. . . . The government contends that these concerns persist unaltered until the noncitizen's removal proceedings are complete.  But the additional procedural safeguards we would allow here under *Mathews* do nothing to undercut those interests.").

There is no dispute that the Government has a strong interest in being able to detain Petitioner if he is a danger or a flight risk.  However, as previously discussed, *see supra* at Part III.B, the Government has not argued that Petitioner is a danger to the community and

13

Petitioner's conduct in the United States supports a determination that Petitioner is not a flight risk. "Where the noncitizen poses no danger and is not a flight risk, all the government does in requiring detention is 'separate[ ] families and remove[ ] from the community breadwinners, caregivers, parents, siblings and employees.'" *Black*, 103 F.4th at 154 (quoting *Velasco Lopez*, 978 F.3d at 855). Petitioner has been detained for over four months, without either pre-deprivation notice or an opportunity to be heard, based on a guilty plea for two non-violent misdemeanors that he paid a fine to resolve two years ago. Moreover, Petitioner's detention has "no defined endpoint," as he has appealed his removal order to the BIA, which "remains pending, and further review in the Second Circuit may follow, if necessary." (Am. Pet. ¶¶ 72, 74.) Although the Government undoubtedly has an interest in enforcing the immigration laws and protecting public safety, those interests are not impaired by affording Petitioner a bond hearing. *See Raspoutny v. Decker*, 708 F. Supp. 3d 371, 385 (S.D.N.Y. 2023) ("Notwithstanding the Government's significant interest in protecting the public's safety, the Government is certainly able to present that interest at a hearing." (internal quotation marks omitted)). I also do not see how the Government's objectives of "protecting the community" and ensuring that Petitioner appears at his immigration proceedings, (Opp'n 18), are served by keeping Petitioner detained when he has a non-violent criminal record, supports his family, and has strong ties to the community by virtue of him living in this country for approximately nine years with his family, and the fact that his one-year-old daughter lives in New York. "If [Petitioner] in fact poses either a risk of flight or a danger to the community, then the Government can prove it at a bond hearing, thereby vindicating its interest. If it cannot, then continuing to detain [Petitioner] would not advance the Government's interest in any event." *Joseph*, 2026 WL 1193489, at *7.

14

"Given the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to show a significant interest in Petitioner's detention [without a bond hearing], Petitioner is entitled to more process than he received," *Valdez v. Joyce*, 803 F. Supp. 3d 213, 219 (S.D.N.Y. 2025), which appears to be no process at all, much less prior notice of the detention or an opportunity to respond.  No process is simply inadequate.  Thus, the third *Mathews* factor weighs strongly toward Petitioner.

Accordingly, having applied the *Mathews* factors, I find that due process entitles Petitioner to an individualized bond hearing by an immigration judge.  *See Peguero*, 2026 WL 821428, at *5 (ordering that an LPR who was detained, after returning from a short trip abroad, for eleven months under either Section 1225(b) or Section 1226(c) be provided with a bond hearing instead of immediate release "as the bond hearing will best serve to balance both Petitioner's and the Government's interests"); *Joseph*, 2026 WL 1193489, at *7 (ordering that an LPR who was detained, after a short trip abroad, for five months under either Section 1225(b) or Section 1226(c) was entitled to a bond hearing); *Brissett v. Decker*, 324 F. Supp. 3d 444, 452 (S.D.N.Y. 2018) (holding that the "LPR who was detained on arrival after a brief and innocuous sojourn outside of the country, . . . is entitled to an individualized determination as to his risk of flight and dangerousness once his continued detention has become unreasonable and unjustified"); *cf. Veletanga v. Noemi*, No. 25-CV-9211, 2025 WL 3751865, at *7 (S.D.N.Y. Dec. 26, 2025) (holding that the noncitizen's detention under Section 1226 without a bond hearing for more than three months was "unreasonable and a violation of due process" and "find[ing] that the appropriate remedy is an individualized bond hearing at which the government bears the burden of justifying Petitioner's continued detention"); *Ventura v. Bondi*, No. 26-CV-568, 2026 WL 539879, at *4 (S.D.N.Y. Feb. 26, 2026) (holding that the noncitizen's due process rights

15

were violated by his prolonged mandatory detention under Section 1225(b) "without a bond hearing for more than four months").

The bond hearing must comply with the standard set forth in *Black*, 103 F.4th at 155–59. Specifically, the Government shall bear the burden of demonstrating by clear and convincing evidence that Petitioner is a danger to the community or a risk of flight.  Further, the immigration judge must consider alternative conditions of release before making a determination regarding whether to set a bond—that is, the immigration judge must consider alternatives to detention that may ameliorate both risk of flight and dangerousness—and must additionally consider the Petitioner's ability to pay when setting any bond amount.  *See J.C.G. v. Genalo*, No. 24-CV-08755, 2025 WL 88831, at *11 (S.D.N.Y. Jan. 14, 2025) ("In determining whether to grant bond, the IJ shall consider the availability of alternative conditions of release, and in determining the amount of any bond imposed, the IJ shall consider the Petitioner's ability to pay."); *Hernandez-Aviles v. Decker*, No. 20-CV-7636, 2020 WL 5836519, at *2 (S.D.N.Y. Oct. 1, 2020) ("Several other courts in this circuit have likewise found that immigration judges must examine alternatives to detention and ability to pay when determining both flight risk *and* dangerousness." (emphasis in original) (collecting cases)); *Cabrera Galdamez v. Mayorkas*, No. 22-CV-9847, 2023 WL 1777310, at *9 (S.D.N.Y. Feb. 6, 2023) ("At that [bond] hearing, the Government shall bear the burden of demonstrating by clear and convincing evidence that Petitioner is a danger to the community or a risk of flight, considering Petitioner's ability to pay for a bond and alternatives to detention.").  Thus, "the following conditions must be in place at [Petitioner's] individualized bond hearing:  (i) the Government must carry the burden of proof to establish by clear and convincing evidence that [Petitioner] poses a flight risk or a future danger to the public; (ii) the IJ must meaningfully consider alternatives to imprisonment, including but

16

not limited to release on recognizance, parole, or electronic monitoring; and (iii) the IJ must meaningfully consider [Petitioner's] ability to pay if a monetary bond is set." *M.P.L. v. Arteta,* No. 25-CV-5307, 2025 WL 2938993, at *7 (S.D.N.Y. Oct. 16, 2025) (quoting *Reid v. Decker,* No. 19-CV-8393, 2020 WL 996604, at *12 (S.D.N.Y. Mar. 2, 2020) (alterations in original)).

## IV.    Conclusion

For the reasons stated above, the Amended Petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED IN PART and DENIED IN PART.  The Government is ordered to provide an individualized bond hearing to Petitioner to determine whether his continued detention is justified by **July 13, 2026**.  At the bond hearing, which must be before a neutral immigration judge, the Government must bear the burden of showing, by clear and convincing evidence, that Petitioner presents an unreasonable flight risk or threat to the community that cannot be mitigated by reasonable conditions of supervision or monetary bond.  "In determining whether to grant bond, the [immigration judge] shall consider the availability of alternative conditions of release, and in determining the amount of any bond imposed, the [immigration judge] shall consider Petitioner's ability to pay, though it shall remain within the [immigration judge]'s discretion to determine the influence those considerations shall have on the [immigration judge]'s ultimate decision." *O.F.C. v. Decker,* No. 22-CV-2255, 2022 WL 4448728, at *11 (S.D.N.Y. Sept. 12, 2022).

IT IS FURTHER ORDERED that the Government shall file a status letter to update me about Petitioner's status and the outcome of the bond hearing within 7 days of its occurrence. Thus, the Government shall inform me whether or not a bond hearing has been held by **July 20, 2026**.

IT IS FURTHER ORDERED that, if Petitioner is granted bond, the Government is ENJOINED from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2). *Rueda Torres v. Francis*, No. 25-CV-8408, 2025 WL 3168759, at \*6 (S.D.N.Y. Nov. 13, 2025).

Respondents did not address Petitioner's request for attorneys' fees and costs pursuant to the Equal Access to Justice Act as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412. Thus, if Petitioner still intends on seeking such relief, Petitioner may file a status letter proposing a briefing schedule for any application for attorneys' fees and costs by **September 1, 2026**.

SO ORDERED.

Dated:  June 29, 2026
        New York, New York

Vernon S. Broderick
United States District Judge